UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ELISEE CHERY<br><br>  Plaintiff,<br><br>  -v-<br><br>TOWN OF ENFIELD;<br>ENFIELD POLICE DEPARTMENT<br><br>  Defendant. | CIVIL ACTION NO.<br><br><br>OCTOBER 8, 2019<br><br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

### I. COMPLAINT PRELIMINARY STATEMENT

1. This is a civil action brought by Plaintiff, Elisee Chery (hereinafter, "Chery" or "Plaintiff"), seeking declaratory and injunctive relief and damages for discrimination by the Town of Enfield and Enfield Police Department (hereinafter, "Defendant(s)").

2. Plaintiff claims that the Defendants have engaged in a pattern of discrimination against him leading to his constructive termination or forced resignation. Specifically, Plaintiff makes claims that the Defendants discriminated against the Plaintiff in employment on the grounds of his race, color, and national origin, denied him substantive and procedural due process of law, denied him equal protection of the laws, deprived him of his constitutionally protected rights and subjected him to extreme emotional distress through a variety of improper actions and omissions that comprise, separately and in the aggregate, various actionable wrongs

cognizable under the common law of the State of Connecticut and Federal District Court, as outlined herein.

4. The Defendants' actions violate Civil Rights Act of 1871, 42 U.S.C. Section 1981 and 1983 and the Civil Rights Act of 1964, 42 U.S.C. Section 2000 et seq. (as amended, 1972) (Title VII), among other applicable statutes under law.

5. The plaintiffs claim a trial by jury in this matter.

## II. BASIS FOR JURISDICTION AND VENUE

6. Jurisdiction is conferred on this Court and made actionable against the defendants, Town of Enfield and Enfield Police Department pursuant to the provisions of Title 28 U.S.C. §1331. Title 28 U.S.C. § 1343, Title 28 U.S.C. § 2201(a), Title 42 U.S.C. § 1981, and Title 42 U.S.C. § 1983, and the doctrine of supplemental and pendent jurisdiction over claims asserting violation of the Constitution or laws of the State of Connecticut.

7. Venue is appropriate and proper for this action in the United States District Court for the District of Connecticut, under 28 U.S.C. §1391, because all incidents giving rise to this action occurred within this judicial district.

## III. EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. All conditions precedent to jurisdiction have occurred or been complied with in the following manner:

(a) A charge of employment discrimination on the basis of race discrimination was filed on or about May 5, 2018, with both the State of Connecticut Commission on Human Rights & Opportunities and the United States Equal Employment Opportunity Commission, which filing

was within 180 days of the commission of the unlawful employment practices alleged herein. The case was CHRO case number 1840360 and EEOC case number 16A-2018-01104.

(b) By letter dated July 11, 2019, the Plaintiff was issued a "Release of Jurisdiction" by the State of Connecticut Commission on Human Rights & Opportunities, a copy of which notice is attached.

(c) By letter dated September 10, 2019, the Plaintiff was issued a "Notice of Right to Sue" from the United States Equal Employment Opportunity Commission (EEOC), a copy of which notice is attached.

## IV. PARTIES TO THIS COMPLAINT

9. Plaintiff Elisee Chery currently resides at 411 Conestaga Street, Windsor, CT 06095 and has lived there since approximately June 2017.

10. Plaintiff is married to his wife, Sabrina Chery.

11. Plaintiff is over the age of eighteen years old and identifies racially as Black/African American, is of Haitian descent, dark skin complexion, and speaks with a slight accent.

12. Plaintiff is a member of a protected class.

13. Defendant Town of Enfield ("the Town") is a municipal corporation formed and operated pursuant to state and federal law.

14. Defendant Town of Enfield maintains a municipal police force, the Enfield Police Department, which is self- described as "a full-service law enforcement agency dedicated first and foremost to the safety and security of all of our residents and to visitors of our community."

15. The Defendants, Town of Enfield and the Enfield Police Department, employs 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and has had over 15 employees at all times relevant to this complaint.

## V. STATEMENT OF FACTS

16. Mr. Elisee Chery served as a police officer in Washington, DC prior to moving to Connecticut.

17. Plaintiff attended a seven-month Police Academy program for the Washington, DC police department, which commenced in June 2014.

18. In the Police Academy, Plaintiff trained, studied and was tested on all required specialized subjects and trainings, including but not limited to Civil Disturbance, First Aid, CPR, Weapons Training, Search & Seizure, and Active Shooter to name a few, passing an exam in each area before advancing to the next.

19. At the end of the Academy, Plaintiff took and passed a final written exam, a physical exam, and other various testing before officially completing the program and graduating from the Academy.

20. Plaintiff graduated from the Academy in February 2015.

21. Following graduation from the Academy, Plaintiff was required to complete twelve weeks of Field Training in four-week intervals, supervised by other police officers known as Field Training Officers ("FTO").

22. At the end of the twelve weeks of on-the-job training, Plaintiff was observed and tested by a Sergeant to ensure he would be ready to serve as an officer on his own.

23. Plaintiff passed all required testing and observation and was cleared to serve on his own shift as a police officer in June 2015.

24. Plaintiff was then assigned to the Seventh District known as Southeast, DC where he served as a police officer and scored good or better on all performance evaluations until he moved to Connecticut in 2017 to be closer to his family.

25. Plaintiff applied for a lateral move to the Enfield Police Department for which he qualified for and was accepted with a start date of June 2017.

26. Upon information and belief, the Enfield Police Department reflects very little diversity within it, with Plaintiff being the only African American police officer at the time of his employment with Defendant.

27. The Enfield Police Department employs approximately 100 police officers and administrators on its police force, of which only two of them is Black/African-American.

28. The leadership within the Enfield Police Department consists of one Chief of Police, one Deputy Chief, two Captains, and a number of lieutenants and sergeants, only one of which being of African descent: a sergeant.

29. Field Training Officers ("FTO") of the Enfield Police Department is responsible for training and evaluating new police officers, none of which were African American during Plaintiff's employment with Defendant.

30. Plaintiff was not required to attend the Connecticut Police Academy because of his service as a police officer in another district.

31. Plaintiff did however complete a number of training programs relating to Connecticut laws and procedures, some classes lasting several days, while others lasted several weeks.

32. When Plaintiff was not in class during this training time, he would "ride along" with other police officers. This period was often referred to as "limbo".

33. After successful completion of the required courses, Plaintiff started a twenty-week Field Training program ("FTO").

34. Unfavorable grading can negatively impact an officers' ability to advance within the police department and cause great inconvenience to the officer, particularly an officer that moved into the State of Connecticut to join the police force.

35. During FTO Plaintiff was first assigned to train with Officer Timothy Garash, a White male officer, for five weeks, but ultimately served four weeks with Officer Garash, and during the final week, Plaintiff trained with a White female officer as Officer Garash had scheduled time off.

36. Upon information and belief, this White female officer reported Plaintiff to Sergeant Keith Parent, a White Sergeant, portraying Plaintiff as being "rude" and "aggressive" during training.

37. Plaintiff denies said accused behaviors and attributes said descriptors as those often used in referencing Black/African Americans.

38. Other officers and superiors would app\ear to go out of their way to ignore and/or avoid Plaintiff.

39. When certain officers would speak to Plaintiff, all of whom were White, several would make inappropriate and offensive comments relating to Plaintiff's accent and how he doesn't belong on the police force.

40. On more than one occasion, officers, all of whom were White, would either directly to Plaintiff or in his presence that they "couldn't understand" Plaintiff because of "his accent"

and would laugh at Plaintiff while several officers took turns mocking his accent, or otherwise making fun of Plaintiff.

41. Several officers would indicate over the police radio that they couldn't understand Plaintiff's accent and then flat out ignore any further attempts Plaintiff would make to speak over the radio system.

42. When Plaintiff would continue to attempt communicating over the police issued radio/communication device, other officers interrupt his speaking by loudly yelling, "we can't understand you", or otherwise ignore the Plaintiff.

43. Officers would mock Plaintiff's accent and imitate his speech over the police radio.

44. Plaintiff felt embarrassed, humiliated and distressed by each of these interactions.

45. Plaintiff reported these incidences to his superior, namely Officer Garash.

46. Upon information and belief, these officers were not disciplined or reprimanded.

47. Plaintiff's next FTO session assignment was with Officer Prior.

48. Plaintiff observed Officer Prior meet with Sergeant Parent before the start of a shift with Plaintiff.  Following the meeting with Sergeant Parent, Officer Prior said to the Plaintiff, "I'm going to start grading you a lot harder now."

49. During the course of the second FTO assignment, Plaintiff was treated disparately by other officers and his superiors.

50. Officers and superiors would often not speak with Plaintiff at all.

51. On one occasion, when Plaintiff was attempting to leave the Department parking lot, another police officer "ran" Plaintiff's license plates, and otherwise treated Plaintiff as a suspect rather than a fellow officer.

52. In a group setting, an Officer known as "Mickey" said to Plaintiff, "you look like you belong in Hartford; there are more of your kind there."

53. Plaintiff reported these additional incidences but none of the officers were disciplined or reprimanded, rather the discriminatory behaviors continued, and Plaintiff suffered retaliation.

54. In the Plaintiff's view, there existed an inner circle of accepted police officers within the Enfield Police Department and in the Plaintiff's view, this inner circle was like an old boys' club that protected its own and excluded those that were different.

55. During the second session of FTO, and while enduring such treatment and comments, Plaintiff was extended not once, but twice maintaining him in the second FTO session rather than being advanced to the third session.

56. Upon being extended the second time, Plaintiff was assigned to train with Officer Nicholas King.

57. Officer King said to Plaintiff, "you're in trouble because when they send you to me, that means you are out the door."

58. Plaintiff endured further humiliation, discrimination and retaliation.

59. Officer Nicholas King asked Plaintiff about his accent and asked "why" Plaintiff "talks like that" on more than once occasion, each time laughing during the questioning.

60. On one occasion during Field Training, Officer King drove Plaintiff across town lines to the jurisdiction of another police department where Plaintiff was introduced to another officer from another police department by Officer King saying to the other officer, "I wanted you to hear this guy; he sounds funny."

61. Officer King and the other officer then began laughing at Plaintiff's expense as he stood there embarrassed and humiliated.

62. On one occasion, Officer "Mickey" and Plaintiff went into a neighborhood in Enfield and encountered two male citizens whom could be identified to be of Black/African American race.  Officer "Mickey" then said to Plaintiff, see look, you're right at home with your people here" and laughed.

62. During a session with FTO Kevin Region, Officer Region said to Platinff that he told his superiors that laitnff just wanted to finish FTO so that he could start watching movies on his laptop.

63. Plaintiff told Officer Region that is wasn't true immediately.

64. During one of the few conversations Officer Region had with Plaintiff; the two officers discussed their current housing situations.

65. Plaintiff indicated he was looking for a home to purchase to which Officer Region replied, "don't buy a house; you won't be making it out of FTO."

66. Sergeant Parent informed Plaintiff that he would be moving on to the next FTO session, Plaintiff's third.

67. Plaintiff spent the evening preparing based on the suggestions of his superior.

68. The day, Plaintiff was told he would be meeting with the Captain prior to moving on to the next session.  Instead, he was asked to meet with he Chief of Police.

69. Upon meeting with the Chief of Police, Plaintiff was provided a blank sheet of paper and told he had two options: one was to resign, the other was to be terminated effective immediately.

70. When he attempted to ask questions about what was happening, Plaintiff was told to "shut up and start writing."

71. Plaintiff asked if he could think about his options overnight and again was told to "start writing."

72. The only response Plaintiff received for his forced resignation or firing options was that he was "not a good fit" and he "didn't belong in Enfield."

73. Feeling intimidated to do so and without any other options, Plaintiff wrote a short statement resigning from his position as a police office.

74. Plaintiff was then escorted out of the building.

75. Despite his efforts, Plaintiff has been unable to secure employment as a police officer in any other jurisdiction.

76. As a result of the stress, distress, and vocational pressure resulting from the facts asserted above, the Plaintiff suffered mental and emotional harm.

77. As a direct result of the discriminatory actions and omissions, engaged in by Defendants, the Plaintiff was compelled to seek counseling and undergo treatment.

## VI. STATEMENT OF CLAIMS

### COUNT ONE: RACE DISCRIMINATION
### IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

78. Plaintiff adopts and by reference thereto realleges paragraphs 1-77 above as though fully set forth herein.

79. During the time of Plaintiff's employment, Defendants discriminated against Plaintiff with respect to the terms, conditions and privileges of his employment because of his race (Black) in violation of Title VII of the Civil Rights Act of 1964, as amended by Civil Rights Act of 1991, 42 U.S.C. §2000e et seq.

80. In particular, Defendants intentionally by their actions, willfully, maliciously, intentionally and with reckless indifference to the rights of Plaintiff, discriminated against Plaintiff on the basis of his race (Black) when it terminated his employment as a Police Officer while similarly situated non-Black Police Officers who engaged in conduct of comparable or worse seriousness were subjected to less harsh disciplinary treatment -- suspension and/or termination followed by reinstatement.

81. The conduct of the Defendants, described in paragraphs 2 through 7 above, not only demonstrates reckless indifference to Plaintiff's protected civil rights, that conduct is malicious, wanton, oppressive, extreme, outrageous and shocking to the conscience.

82. As a direct and proximate result of the unlawful acts and omissions of the Defendants described above, the Plaintiff, and all those similarly situated, have been deprived of equal opportunity in their employment as well as protected rights, and have suffered adversely with regard to employment prospects, the result of which has been economic loss, under-representation, under-utilization and extreme emotional distress.

83. Defendants' reasons for its unlawful treatment and termination of Plaintiff as a Police Officer were unfounded and a pretext for unlawful race discrimination.

84. As a direct and proximate result of the intolerable, intentional and premeditated discriminatory acts by Defendants, Plaintiff has been damaged.

85.  Damages include back pay and future pay, future pecuniary losses, medical costs and expenses, emotional and physical pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses. Those damages are sought pursuant to Title VII, 42 U.S.C. §2000e et seq., generally, and 42 U.S.C. §1981a.

## COUNT TWO: VIOLATION OF §1983
## EQUAL PROTECTION

86.  Plaintiff adopts and by reference thereto realleges paragraphs 1-85 above as though fully set forth herein.

87. At all material times, Defendant and its agents and representatives acted under color of state or municipal statutes, customs, ordinances and usage.

88. During the time of Plaintiff's employment, Defendant discriminated against Plaintiff with respect to the terms, conditions and privileges of his employment because of his race (Black) and subjected him to disparate treatment by terminating his employment when other similarly situated non-Black Police Officers who engaged in conduct of comparable or worse seriousness were subjected to less harsh disciplinary treatment -- suspension and/or termination followed by reinstatement.

89. In so doing, Defendants deprived Plaintiff of the rights, privileges and immunities secured him by the Equal Protection Clause of the Fourteenth Amendment to the Constitution of the United States of America as secured by 42 U.S.C. §1983.

90. Defendants' discriminatory actions were part of its accepted customs or policies and/or were carried out by persons with final policy-making authority in the areas of employment and/or personnel matters.

91. As a direct and proximate result of the intolerable, intentional and premeditated discriminatory acts by Defendant, Plaintiff has been damaged to include back pay and future pay, future pecuniary losses, medical costs and expenses, emotional and physical pain and suffering, humiliation, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

## COUNT THREE: COLOR DISCRIMINATION
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

92. Plaintiff adopts and by reference thereto realleges paragraphs 1-91 above as though fully set forth herein.

93. Plaintiffs allege that Defendant through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' color in violation of 42 U.S.C. § 2000e-2.

94. As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT FOUR: DISCRIMINATION ON THE BASIS OF NATIONAL ORIGIN
## IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

95. Plaintiff adopts and by reference thereto realleges paragraphs 1-94 above as though fully set forth herein.

96. Plaintiffs allege that Defendant through its agents engaged in a pattern and practice of discrimination against them with respect to the terms, conditions and privileges of employment because of the plaintiffs' national origin and accent in violation of 42 U.S.C. § 2000e-2.

97. As a result of the acts of Defendants' under color of law, Plaintiffs suffered emotional distress, humiliation and embarrassment, medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT FIVE:  VIOLATION OF
## THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT

98. Plaintiff adopts and by reference thereto realleges paragraphs 1-97 above as though fully set forth herein.

99. The actions of the Defendants alleged herein violate the provisions of Connecticut General Statutes §46a-60(a)(1) and Connecticut General Statutes §46a-60(a)(4).

100.  Defendant engaged in race, color and national origin discrimination against the Plaintiff with malice or reckless indifference to Plaintiff's rights under the Connecticut Fair Employment Practices Act.

101. Defendants violated the rights secured to the Plaintiff by the provisions of the Connecticut Fair Employment Practices Act, which prohibits discrimination on the basis of race, color, and national origin, among other things.

102.  The plaintiff has suffered, and continues to suffer, as a result of the Defendants' discrimination, including substantial damages for future pecuniary losses, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

103. Because Plaintiff's race, color, and national origin was a motivating factor in the Defendants' removal of the Plaintiff from his assignment with the Enfield Police Department, Defendant violated the provisions of the Connecticut Fair Employment Practices Act.

## COUNT SIX:
## DISPARATE TREATMENT/ DISPARATE IMPACT

104. Plaintiff adopts and by reference thereto realleges paragraphs 1-94 above as though fully set forth herein.

105. Plaintiff's Civil Rights were unlawfully violated in that not only did the Defendants fail to offer Plaintiff the usual additional opportunities to prove his qualifications, they dismissed the Plaintiff as a viable officer within the Department.

106. Plaintiff performed well in another district as a police officer, performed well on all written exams, and it isn't until he encounters and complains of discriminatory treatment that he is ousted from his post as a police officer with the Defendant, contrary to the way White officers have been treated.

107. Defendants actions and omissions as outlined herein, constitute disparate treatment with respect to Plaintiff and that treatment has continued through to and including the present in that at no time relevant to this matter has any African-American person been hired as a police officer in and for the Enfield Police Department.

108. That the said treatment, constituting disparate treatment also manifests a disparate impact upon African American persons and that such disparity cannot be justified by any legitimate business necessity.

109. That all of the above constitute an ongoing pattern and practice of discrimination on the part of the Defendants the result of which is and continues to be a profound under-representation of African Americans as police officers of the Enfield Police Department.

110. As part of the Defendants aforementioned pattern and practice of discrimination, a disproportionate number of White officers are employed with the Town of Enfield and, conversely, African Americans are disproportionately under-represented as police officers.

111. The Defendants, at all times relevant to this matter, to and including the present, have failed and/or refused to implement a hiring policy based upon objective, non-discriminatory, job-related qualifications and criteria such that the chronic under-representation of African-Americans as police officers has been allowed to continue unabated and unchanged.

## COUNT SEVEN:
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

112. Plaintiff adopts and by reference thereto realleges paragraphs 1-111 above as though fully set forth herein.

113. The conduct of the Defendants described above is extreme and outrageous and shocking to the conscience.

114. As a direct and proximate result of the unlawful acts and omissions of the Defendants described above, the Plaintiff has been deprived of equal opportunity in his employment, has suffered adversely with regard to his present and future employment prospects and has thereby suffered economic loss, and has suffered extreme emotional distress.

115. The actions of the defendants were intentional.

116. Defendants knew or should have known that their actions were likely to and did cause Plaintiff emotional distress, and that emotional distress was severe.

117. The actions of Defendants constitute the intentional infliction of emotional distress.

118. As a result of the actions of the defendants, the plaintiff has suffered loss of his constitutional rights; humiliation and ridicule; economic losses, including but not limited to loss of income and employment benefits; loss of employment and employment opportunities, advancement and training; loss of self-esteem, peace of mind, emotional and physical wellbeing; loss of reputation and standing in the Police Department, in the eyes of prospective law

enforcement employers and in the public at large; and has suffered severe emotional and mental distress.

## COUNT EIGHT:
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

119. Plaintiff adopts and by reference thereto realleges paragraphs 1-118 above as though fully set forth herein.

120. It was reasonably foreseeable that the actions and omissions of the Defendants, above described, would cause harm to the Plaintiff; and, particularly, that said actions would cause emotional distress.

121. Defendants' conduct has been unreasonable and improper.

122. Defendants knew or should have known that as a result of its conduct, Plaintiff would suffer emotional distress or that such distress was a likely result of its actions and that further, such emotional distress might result in illness or bodily harm.

123. Defendant's reckless conduct as described above has caused Plaintiff to suffer severe and continuing mental and emotional distress and anguish. Defendant is justly liable to Plaintiff for the damage he has suffered and will continue to suffer.

## VII. REQUEST FOR RELIEF

WHEREFORE, Plaintiff Elisee Chery, prays for judgment against all named Defendants as follows:

1. Awarding monetary damages to Plaintiff in an amount to be determined that would fully compensate Plaintiff for Defendants' discriminatory, retaliatory, and

negligent actions in violation of State and Federal laws; including pre-judgment and post-judgment interest on their economic losses;

2. Awarding compensatory and punitive damages to Plaintiff in an amount to be determined that would fully compensate Plaintiff for Defendants discriminatory, retaliatory, and negligent actions in violation of and in pursuant to the applicable State and Federal laws; including pre-judgment and post-judgment interest on their economic losses;

3. Accepting jurisdiction of federal and supplemental State claims alleged herein;

4. Awarding reasonable costs and attorneys' fees pursuant to applicable State and Federal laws;

5. Punitive damages;

6. Awarding any other as this court may deem just and proper.

**JURY DEMAND**

Plaintiff, Elisee Chery hereby demands a trial by jury.

PLAINTIFF,
Elisee Chery

BY:/s/Garlinck Dumont
Garlinck Dumont, Esq.
Dumont Law, LLC
1028 Boulevard, No. 311
West Hartford, CT 06119
Tel: 860-348-5702
Fax: 860-469-2692
Juris No.: ct30441
Email: gdumont@dumontlawllc.com